IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–00461–KMT

DAWN CANFIELD,

    Plaintiff,

v.

DOUGLAS COUNTY, a public entity,
DOUGLAS COUNTY DEPARTMENT OF HUMAN SERVICES,
VALERIE ELSON, individual and official capacity,
LESA ADAME, individual and official capacity,
CHERYL CAPLECHA, individual and official capacity,
TRACY MUDGET, individual and official capacity,
KRISTINE JOHNSON, individual and official capacity,
NICOLE BECHT, individual and official capacity,
PATRICK SWEENEY, individual and official capacity,
SHERRY HANSEN, individual and official capacity, and
DOES 1 through 10, inclusive,

    Defendants.

## ORDER

This case involves claims that Defendants violated Plaintiff's constitutional rights and Colorado law. This matter is before the court on Defendants Douglas County Department of Human Services, Lesa Adame, Tracey Mudget, Kristine Johnson, Nicole Becht, Patrick Sweeney, and Sherry Hansen's ("Douglas Defendants") "Motion to Dismiss" (Doc. No. 31 [Mot.], filed May 16, 2014). Plaintiff filed her response on June 20, 2014 (Doc. No. 40 [Resp.]), and Defendants filed their reply on June 27, 2014 (Doc. No. 43 [Reply]). Defendants Valerie

Elson and Cheryl Caplecha filed their Joinder in the Motion to Dismiss on August 6, 2014. (Doc. No. 70 [Joinder].) The motion is ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff's claims center around child custody proceedings and Plaintiff's loss of parental rights. (*See* Doc. No. 62 [Second Am. Compl.].) Plaintiff sues Douglas County and the Douglas County Department of Human Services ("DHS"), as well as various employees and agents of DHS. (*Id.*)

Plaintiff alleges in September 2010 she went to a domestic violence shelter with her two children because she was concerned her now ex-husband was a threat to her children. (*Id., ¶* 20-21.) Plaintiff alleges in September 2010 the Arapahoe County DHS received a referral from the domestic violence shelter's therapist, and the investigation into the referral was transferred to the Douglas County DHS because of jurisdictional issues. (*Id.*, ¶¶ 21-22.) Plaintiff believes during the investigation, her ex-husband told the DHS defendants that Plaintiff had been arrested in 2008. (*Id.*, ¶ 23.) Plaintiff alleges her ex-husband gave the DHS defendants false and distorted information, but the DHS Defendants believed her husband. (*Id.*)

In early September 2010, Plaintiff filed for a temporary restraining order against her ex-husband, and the hearing was held on September 10, 2010. (*Id.*, ¶¶ 20, 24.) At the hearing, Plaintiff alleges she was confronted by a DHS defendant who expressed concern about Plaintiff's mental health and the safety of her children. (*Id.*, ¶ 24.) Plaintiff was ordered to return to court with her children on September 10, 2010[1] for further proceedings. (*Id.*) After her return to court with her children, a counselor who had provided marriage counseling to Plaintiff

---

[1] In her Complaint, Plaintiff actually states she was ordered to bring the children to the court "on September, 2011." (*Id.*) This appears to be a typographical error.

and her ex-husband and DHS case workers testified at the hearing, and the children were removed from Plaintiff's custody. (*Id.*, ¶¶ 26, 27, 32 on page 9.[2]) Plaintiff alleges she has been denied normal contact with her children since September 2010 "and has had no contact with her children since the ordered [sic] entered in juvenile court on February 24, 2012." (*Id.*, ¶ 29.)

Plaintiff alleges the DHS filed a Juvenile Dependency and Neglect Petition on October 4, 2010, "based solely on false statements by Mr. Canfiled and the paternal grandmother." (*Id.*, ¶ 31.) Plaintiff alleges the DHS defendants performed an assessment from September 3, 2010, until October 21, 2010, when Plaintiff received notice of a "finding of Injurious Environment" against Plaintiff. (*Id.*, ¶ 32 on page 10; ¶ 36.) On December 1, 2010, Plaintiff appeared for a hearing regarding the Dependency and Neglect Petition. (*Id.*, ¶ 42.) Plaintiff alleges at that time she was "coerced [by the defendants] into accepting" a plea of Stipulated Adjudication, after which Plaintiff was allowed contact with her children through supervised visits with children's paternal grandmother. (*Id.*, 42-44.)

Plaintiff states she was put on and completed a treatment plan which, according to DHS, would determine Plaintiff's ability to see her children and regain custody. (*Id.*, ¶¶ 43, 45.) However, "in an effort to prevent Plaintiff from re-establishing her parental rights, DHS forced Plaintiff to undergo a Parental Child Interactional (PCI)" with a biased psychiatric nurse who gave an unfavorable report to DHS. (*Id.*, ¶ 45.) After continued therapy with DHS examiners, Plaintiff hired two independent examiners who concluded Plaintiff was mentally stable and not a threat to her children. (*Id.*, ¶ 46.) Plaintiff alleges this exculpatory evidence was withheld by the

---

[2]The allegations on page 9 of the Complaint are numbered 27 and 32, and on page 10 are numbered 28, 29, 30, 31, and 32. To the extent the court references either paragraph 32, it also will specify the page number on which the paragraph is contained.

defendants from the juvenile dependency court as a continuing effort to malign Plaintiff and keep her separated from her children. (*Id.*)

On October 27, 2011, a guardian *ad litem* was appointed to represent Plaintiff in Allocation of Parental Responsibility proceedings. (*Id.*, ¶ 48.) After hearings in December 2011 and January 2012, the court entered an Order of Allocation of Parental Responsibilities on February 24, 2014, which awarded sole decision-making and allocation of parental responsibilities to the children's father and limited Plaintiff to supervised visitations in a professional facility for three days per week for two to three hours. (*Id.*, ¶¶ 50-51.) Plaintiff alleges the defendants

> have engaged in a campaign of stymying any efforts by Plaintiff to reunify with her children by, but not limited to, the completing of actions . . . and withholding important information from Plaintiff, failing to properly investigate sources of alleged child abuse . . . [,] assigned blame to Plaintiff where none is due, failing to follow the advice of licensed professionals, and refusing to investigat[e] allegations" against the children's father.

(*Id.*, ¶ 54.) Plaintiff states she is involved in ongoing custody proceedings. (*Id.*, ¶ 56.)

Plaintiff asserts claims for violations of her civil rights under 42 U.S.C. § 1983 (*id.* at 22-24), *Monell*-related claims[3] (*id.* at 24-28), various Colorado tort claims (*id.* at 28-35), and a claim for declaratory relief (*id.* at 35-37).

Defendants move to dismiss Plaintiff's Second Amended Complaint on the bases that (1) this Court lacks subject matter jurisdiction over this action; (2) this action is barred by the statute of limitations; (3) the claims are barred by collateral estoppel; (4) there is no *Monell*-type liability; and (5) the individual defendants are immune from liability. (*See* Mot.)

---

[3]Asserted under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

**STANDARD OF REVIEW**

*1.     Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may

not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

### 2. *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679-81. Second, the Court considers the factual allegations "to determine if

they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

### 1. *Subject Matter Jurisdiction Over Familial Association Claim*

Defendants argue that Plaintiff's Second Amended Complaint fails to raise a valid federal question, and thus this Court does not have subject matter jurisdiction. (Mot. at 3-6.)

Defendants attempt to characterize Plaintiff's § 1983 claim as a claim premised on malicious prosecution. (*Id.*) However, in the Complaint, Plaintiff asserts her substantive due process right to familial association was violated when the defendants subjected her to "false accusations on the basis of false evidence that was deliberately fabricated by the government" (Second Am. Compl., ¶¶ 60, 62), that the defendants used "improper and deceptive means to obtain judicial sustention of recommendations seeking to disparage Plaintiff's liberty interests"

(*id.*, ¶ 63), and that the defendants provided the Juvenile Court with falsified information "with the intention that the Juvenile Court rely thereupon, and order that the [ ] children be removed from Plaintiff's custody, which it did" (*id.*, ¶ 64).  In her response, Plaintiff concedes that she does not assert a claim for malicious prosecution under the Fourteenth Amendment.  (*See* Resp. at 3.)

"The Supreme Court has long recognized family relationships as one of the liberties protected by the due process clause of the fourteenth amendment."  *Spielman v. Hildebrand*, 873 F.2d 1377, 1383 (10th Cir. 1989).  The court finds that Plaintiff has alleged a federal claim for a substantive due process violation under the Fourteenth Amendment, and the Court has jurisdiction over the claim.  Therefore, Defendants' motion to dismiss Plaintiff's § 1983 claim for lack of subject matter jurisdiction is denied.

 2. *First, Fourth, and Fifth Amendment Claims*

To the extent Plaintiff asserts a First Amendment familial association claim, the Supreme Court has clarified the constitutional sources of associational freedoms.  In *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the Court held that application of the Minnesota Human Rights Act to compel the Jaycees to accept women as regular members did not infringe members' freedom of intimate association or their freedom of expressive association. While the Court anchored the freedom of expressive association in the First Amendment, *Jaycees*, 468 U.S. at 622, it identified the freedom of intimate association as "an intrinsic element of personal liberty," 468 U.S. at 620.  *See also Wise v. Bravo*, 666 F.2d 1328, 1336-38 (10th Cir. 1981) (Seymour, J., concurring).  In this case, Plaintiff's claim is based on the freedom of intimate

association and not the freedom of expressive association. Thus, Plaintiff's First Amendment Claim is dismissed for failure to state a claim upon which relief can be granted.

In her response, Plaintiff also appears to concede that she does not allege a Fourth Amendment claim. (*See* Resp. at 4, discussing the Fourth and Fourteenth Amendments as stating she "has clearly plead[ed] a violation of her constitutional rights of the Fourteenth Amendment . . . .") Nevertheless, the Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. There is no allegation in the Complaint that Plaintiff was unreasonably searched or seized. Therefore, to the extent Plaintiff asserts a Fourth Amendment claim, it is dismissed for failure to state a claim upon which relief can be granted.

Finally, to the extent Plaintiff attempts to assert a Fifth Amendment claim, deprivations such as those alleged in the Complaint are not actionable pursuant to the Fifth Amendment unless the federal government is somehow involved. *Dockstader v. Miller*, 719 F.2d 327, 332 (10th Cir. 1983). Because there is no allegation of federal involvement, Plaintiff's claim based on the Fifth Amendment is dismissed for failure to state a claim upon which relief can be granted.

3.     *Statute of Limitations*

Defendants also argue that Plaintiff's claims are barred by the statute of limitations. "[L]imitations periods in § 1983 claims are to be determined by reference to the appropriate state statute of limitations." *Hardin v. Straub,* 490 U.S. 536, 539 (1989); *Baker v. Bd. of Regents,* 991 F.2d 628, 632-33 (10th Cir. 1993) ("The length of a statute of limitations period and related questions of tolling and application are governed by state law, unless the tolling rules are

inconsistent with federal law or [policy]."). In Colorado, actions brought under § 1983 are governed by the two-year statute of limitations codified at Colo. Rev. Stat. § 13-80-102(g). *Riel v. Reed,* 760 F. Supp. 852, 854-55 (D. Colo. 1991) (citations omitted); Colo. Rev. Stat. § 13-80-102(g) ("The following civil actions . . . shall be commenced within two years after the cause of action accrues, and not thereafter: . . . all actions upon liability created by a federal statute where no period of limitations is provided in said federal statute.")

While state law governs the limitations period applicable to § 1983 claims, federal law specifies when a § 1983 claim accrues. *Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir. 1987) (citations omitted); *Baker,* 991 F2d 628, 632 (10th Cir. 1993). "Since the injury in a § 1983 case is the violation of a constitutional right, such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Smith v. City of Enid,* 149 F.3d 1151, 1154 (10th Cir. 1998) (quotation omitted). The plaintiff "need not know the full extent of [her] injuries before the statute of limitations begins to run." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) (citations omitted). Additionally, "it is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker*, 991 F.2d at 632.

Plaintiff's only constitutional claim is her substantive due process claim regarding familial association. Thus, the court agrees with Defendants that the claim accrued on September 10, 2010, when her children were removed from her custody (*see* Second Am. Compl., ¶ 30) as this is when Plaintiff knew or should known that her constitutional rights to familial association had been violated.[4] *Smith,* 149 F.3d at 1154. Plaintiff was required to file

---

[4] To the extent Plaintiff attempts to argue when the statute of limitations accrues for a § conspiracy claim (Resp. at 5), Plaintiff has not asserted such a claim.

this case on or before September 12, 2012.  Plaintiff did not file her case in this Court until February 21, 2014.  (Doc. No. 1.)  Therefore, Plaintiff's constitutional claims are barred by the statute of limitations.

In a § 1983 action, state law governs issues regarding the statute of limitations and tolling.  *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995).  Under Colorado law, a plaintiff bears the burden of demonstrating that the statute of limitations should be tolled.  *See Lake Canal Reservoir Co. v. Beethe*, 227 P.3d 882, 886 (Colo. 2010).

Though the argument is not entirely clear, it appears that Plaintiff argues her case should be tolled from September 2010 until she received the Order of Allocation of Parental Responsibilities issued on February 24, 2012.  (*See* Resp. at 5.)  The statute of limitations may be equitably tolled where the defendants' wrongful conduct prevented the plaintiff from asserting her claims in a timely manner.  *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo. 1996). Other jurisdictions have applied equitable tolling where "extraordinary circumstances" make it impossible for the plaintiff to file his or her claims within the statutory period.  *Hartman*, 911 P.2d at 1097.  The reasoning underlying these latter cases is that it is unfair to penalize the plaintiff for circumstances outside his or her control, so long as the plaintiff makes good faith efforts to pursue the claims when possible.  *Id.*  "Thus, an equitable tolling of a statute of limitations is limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts."  *Id.* at 1099.  Here, there is no allegation or evidence that the defendants wrongfully impeded Plaintiff's ability to bring her suit in this Court.  Moreover, the Colorado Supreme Court has yet to find a case that

qualifies as an "extraordinary circumstance" that would justify tolling.[5]  The court finds equitable tolling should not be applied in this case.

Plaintiff also argues that the continuing violation doctrine, which would toll the statute of limitations until the entry of the Order of the Allocation of Parental Rights, is applicable to this case.  (Resp. at 5.)  However, the Tenth Circuit has never extended the doctrine in § 1983 cases, *Fogle v. Slack*, 419 F. App'x 860, 864 (10th Cir. 2011), and this court also declines to do so.

Therefore, Plaintiff's constitutional claim is time barred and is dismissed.

### 3. *Supplemental Jurisdiction*

Plaintiff's remaining claims are Colorado tort claims.  The court "may decline to exercise supplemental jurisdiction" over the state tort claims, because it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Tenth Circuit has made clear that it encourages and favors that the district courts decline to exercise jurisdiction on state law claims.  *See Koch v. City of Del City*, 660 F.3d at 1248 ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

The court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and they are dismissed without prejudice.

---

[5] The Colorado Supreme Court has relied on cases from other jurisdictions to illustrate that tolling may apply when a plaintiff is truly precluded from filing suit: *Hanger v. Abbott*, 73 U.S. (6 Wall.) 532, 18 L.Ed. 939 (1867) (courts in southern states were closed during the Civil War); *Seattle Audubon Society v. Robertson*, 931 F.2d 590 (9th Cir. 1991) (district court's erroneous enforcement of an unconstitutional statute barred plaintiff from filing), *rev'd on other grounds*, 503 U.S. 429 (1992); and *Osbourne v. United States*, 164 F.2d 767 (2d Cir. 1947) (plaintiff held by Japan during World War II).  *See Hartman*, 911 P.2d at 1097.  Plaintiff's circumstances are dissimilar to the circumstances in these cases.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that Defendants' "Motion to Dismiss" (Doc. No. 31) is **GRANTED**. Plaintiff's First Claim for Relief, asserting constitutional violations, is dismissed with prejudice. Plaintiff's remaining Colorado tort claims are dismissed without prejudice. It is further

**ORDERED** that judgment shall enter in favor of the defendants and against the plaintiff. It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. It is further

**ORDERED** that this case is **CLOSED**.

Dated this 16th day of December, 2014.

BY THE COURT:

_____
Kathleen M Tafoya
United States Magistrate Judge